**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

--------------------------------------------------------

ELAINE WANG,                                          :
                                                      :
           Plaintiff,                          :   Case No. _____
                                                      :
v.                                                    :
                                                      :   **COMPLAINT FOR VIOLATIONS OF**
IMMUNOMEDICS, INC., DR. BEHZAD                         :   **SECTIONS 14(e), 14(d) AND 20(a) OF**
AGHAZADEH, ROBERT AZELBY, DR.                          :   **THE SECURITIES EXCHANGE ACT**
CHARLES BAUM, M.D., Ph.D., SCOTT                       :   **OF 1934**
CANUTE, BARBARA DUNCAN, PETER                          :
BARTON HUTT, and DR. KHALID ISLAM,                     :   **JURY TRIAL DEMANDED**
                                                      :
           Defendants.                         :
--------------------------------------------------------:

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

      1.     This is an action brought by Plaintiff against Immunomedics, Inc. ("Immunomedics

or the "Company") and the members Immunomedics board of directors (the "Board" or the

"Individual Defendants" and collectively with the Company, the "Defendants") for their violations

of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"),

in connection with the proposed acquisition of Immunomedics by affiliates of Gilead Sciences,

Inc. ("Gilead").

      2.     Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the

"Solicitation Statement") to be filed on September 24, 2020 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Solicitation

Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Maui Merger Sub, Inc., a wholly owned subsidiary of Gilead, will merge with and into Immunomedics, with Immunomedics continuing as the surviving corporation and as a wholly owned subsidiary of Gilead (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated September 13, 2020 (the "Merger Agreement"), each Immunomedics common share issued and outstanding will be converted into the right to receive $88.00 per Share, net to the holder in cash, without interest (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of Immunomedics's outstanding common stock and will expire on October 22, 2020.

3.      Defendants have now asked Immunomedics's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.   Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Immunomedics's financial projections relied upon by the Company's financial advisors, Centerview Partners LLC ("Centerview") and BofA Securities, Inc. ("BofA") in their financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the financial advisors. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Immunomedics stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Immunomedics's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Immunomedics is headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Immunomedics common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Dr. Behzad Aghazadeh has served as a member of the Board since March 2017 and is the Executive Chairman of the Board.

11.     Individual Defendant Robert Azelby has served as a member of the Board since February 2020.

12.     Individual Defendant Dr. Charles Baum, M.D., Ph.D. has served as a member of the Board since February 2019.

13.     Individual Defendant Scott Canute has served as a member of the Board and since March 2017.

14.     Individual Defendant Barbara G. Duncan has been a member of the Board since March 2019.

15.     Individual Defendant Peter Barton Hutt has served as a member of the Board since March 2017.

16.     Individual Defendant Dr. Khalid Islam has served as member of the Board since March 2017.

17.     Defendant Immunomedics is incorporated in Delaware and maintains its principal offices at 300 The American Road, Morris Plains, New Jersey 07950.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "IMMU."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

20.     Immunomedics, a clinical-stage biopharmaceutical company, develops monoclonal antibody-based products for the targeted treatment of cancer. Its advanced antibody-drug conjugates are sacituzumab govitecan and labetuzumab govitecan, which are in advanced trials for

various solid tumors and metastatic colorectal cancer, respectively. The company focuses on commercializing sacituzumab govitecan as a third-line therapy for patients with metastatic triple-negative breast cancer in the United States. It also develops IMMU-140, a humanized antibody directed against an immune response target. Its other product candidates include products for the treatment of cancer and autoimmune diseases, including epratuzumab, an anti-CD22 antibody; veltuzumab, an anti-CD20 antibody; milatuzumab, an anti-CD74 antibody; and IMMU-114, a humanized anti-HLA-DR antibody. The company has clinical collaboration with AstraZeneca, MedImmune, and Roche; collaboration agreement with The Bayer Group; clinical and preclinical collaborations with academic cancer institutions; and research collaboration with the Memorial Sloan Kettering Cancer Center. It also has a partnership agreement with the Samsung BioLogics Co., Ltd. to manufacture hRS7, an Immunomedics proprietary humanized antibody; and a collaboration and license agreement with pH Pharma Co. Ltd. for the development and commercialization of multiple novel antibody-drug conjugates in oncology. The company was founded in 1982 and is headquartered in Morris Plains, New Jersey.

21.     On September 13, 2020, Gilead and the Company announced the Proposed Transaction:

> FOSTER CITY, Calif. & MORRIS PLAINS, N.J.--(BUSINESS WIRE)--Gilead Sciences, Inc. (Nasdaq: GILD) and Immunomedics (Nasdaq: IMMU) announced today that the companies have entered into a definitive agreement pursuant to which Gilead will acquire Immunomedics for $88.00 per share in cash. The transaction, which values Immunomedics at approximately $21 billion, was unanimously approved by both the Gilead and Immunomedics Boards of Directors and is anticipated to close during the fourth quarter of 2020.
>
> The agreement will provide Gilead with Trodelvy™ (sacituzumab govitecan-hziy), a first-in-class Trop-2 directed antibody-drug conjugate (ADC) that was granted accelerated approval by the U.S. Food and Drug Administration (FDA) in April for the treatment of

adult patients with metastatic triple-negative breast cancer (mTNBC) who have received at least two prior therapies for metastatic disease. Immunomedics plans to submit a supplemental Biologics License Application (BLA) to support full approval of Trodelvy in the United States in the fourth quarter of 2020. Immunomedics is also on track to file for regulatory approval in Europe in the first half of 2021.

In the Phase 3 ASCENT study, which was halted early due to efficacy based on the unanimous recommendation of the independent Data Safety Monitoring Committee, Trodelvy significantly improved progression-free survival (PFS) and overall survival (OS) in previously treated patients with advanced mTNBC. Detailed results from this study are expected to be presented at the upcoming European Society for Medical Oncology (ESMO) Virtual Congress 2020.

Beyond mTNBC, Trodelvy is also being studied in an ongoing Phase 3 trial in third line HR+/HER2- breast cancer and a registrational Phase 2 study in bladder cancer. Additional ongoing studies are evaluating the potential of Trodelvy as a treatment for non-small cell lung cancer and other solid tumor types. Trodelvy is being studied as both a monotherapy and in combination with checkpoint inhibitors and other non-immuno-oncology products by Immunomedics and independent investigators. Additional clinical data for Trodelvy in bladder cancer and other solid tumors will also be presented at ESMO this coming week.

"This acquisition represents significant progress in Gilead's work to build a strong and diverse oncology portfolio. Trodelvy is an approved, transformational medicine for a form of cancer that is particularly challenging to treat. We will now continue to explore its potential to treat many other types of cancer, both as a monotherapy and in combination with other treatments," said Daniel O'Day, Chairman and Chief Executive Officer, Gilead Sciences. "We look forward to welcoming the talented Immunomedics team to Gilead so we can continue to advance this important new medicine for the benefit of patients with cancer worldwide."

"We are very pleased that Gilead recognized the value of Trodelvy – both for the important role it has already begun to play for patients with metastatic triple-negative breast cancer and for its potential to help many other patients with cancer in the future," said Behzad Aghazadeh, PhD, Executive Chairman of

Immunomedics. "We are excited for the opportunities ahead of us as we join with Gilead to advance our shared mission in defeating cancer. By working with Gilead, we have the opportunity to accelerate our progress and improve care for patients in need of new therapies."

**<u>Compelling Strategic Benefits</u>**

- **Rapidly Expanding Trodelvy's Benefit for Patients Globally:** After closing Gilead intends to initiate numerous additional mid- and late-stage studies in the near term to determine which patients will benefit from Trodelvy as both a monotherapy or in combination with other products. Gilead brings commercial, medical, regulatory and manufacturing expertise, which will help rapidly advance Trodelvy through development and reach additional patients. Gilead will also bring to Immunomedics an established infrastructure and operations in Europe and Japan to support the launch of Trodelvy in those regions, pending approval. After closing, Gilead will retain global rights to Trodelvy outside of greater China, South Korea and certain Southeast Asian countries.

- **Trodelvy is Foundational to Gilead's Oncology Franchise:** Trodelvy will bring to Gilead a cornerstone product that broadens and deepens the company's solid tumor pipeline, building on current marketed products and late-stage clinical candidates for patients with hematological malignances at Kite and Gilead, including Yescarta®, Tecartus® and magrolimab.

  Trodelvy is approved as a third-line treatment for mTNBC and has shown promise for earlier stages of the disease. TNBC represents approximately 15 to 20 percent of all breast cancer cases and is generally considered the most aggressive form of breast cancer. HR+/HER2- breast cancer accounts for more than 70 percent of all breast cancers.

- **Accelerates Gilead's Revenue and EPS Growth:** Trodelvy was launched in May of 2020 and has significant commercial potential in mTNBC and other solid tumors. In addition to immediately accelerating Gilead's revenue growth, the acquisition of Immunomedics is expected to be neutral to accretive to Gilead's non-GAAP EPS in 2023 and significantly accretive thereafter.

**<u>Transaction Terms and Financing</u>**

Under the terms of the merger agreement, a wholly-owned subsidiary of Gilead will promptly commence a tender offer to acquire all of the outstanding shares of Immunomedics' common stock. The $88.00 per share acquisition price represents a 108 percent premium to Immunomedics' closing price on September 11, 2020. Following successful completion of the tender offer, Gilead will acquire all remaining shares not tendered in the offer through a second step merger at the same price as the tender offer.

The consummation of the tender offer is subject to various conditions, including a minimum tender of at least a majority of outstanding Immunomedics shares, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions.

The tender offer is not subject to a financing condition and will be funded through approximately $15 billion in cash on hand, as well as approximately $6 billion in newly issued debt. Gilead expects to retain an investment grade credit rating following this transaction and this agreement does not alter Gilead's stated capital allocation strategy or its commitment to maintain and grow its dividend over time.

Lazard and Morgan Stanley & Co. LLC are acting as financial advisors to Gilead. Centerview Partners LLC and BofA Securities are acting as financial advisors to Immunomedics. Cowen & Company, LLC also provided advice to Immunomedics. Davis Polk & Wardwell LLP is serving as legal counsel to Gilead and Watchell, Lipton, Rosen & Katz is serving as legal counsel to Immunomedics.

* * *

22.     It is therefore imperative that Immunomedics's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     The Materially Incomplete and Misleading Solicitation Statement**

23.     On September 24, 2020, Immunomedics filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.  The Solicitation Statement was furnished to

the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

24.    The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by the financial advisors, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisor in support of its fairness opinion of the transaction.

25.    For the Projections prepared by Company management for fiscal years 2020 through 2034, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (a) EBIT; and (c) Unlevered Free Cash Flow, but fails to disclose: (i) the line items used to calculate the non-GAAP measures or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G.

26.    When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable

method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

29.     The Solicitation Statement also fails to provide what the risk and probability adjustments were assumed and applied for the purposes of preparing the Projections.

30.     As indicated on page 23 of the Solicitation Statement, the Projections are "risk-adjusted," but the Solicitation Statement does not explain why only risk-adjusted figures are disclosed. The omission of the inputs to the Projections are material because financial projections are intended to be management's best estimate of the Company's future cash flows, but without disclosure of the specific probabilities for risk-adjustments, shareholders cannot discern whether

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

they agree that management has adequately adjusted the Projections for market and regulatory risk. Further, the Projections form the basis for the financial analyses performed by the Company's financial advisors, and without disclosure of the specific probabilities, the analyses are rendered materially misleading.

31.     With respect to Centerview's *Selected Public Company Analysis*, the Solicitation Statement fails to disclose (i) the inputs and assumptions used to select the reference range of 4.0x to 6.0x 2024E revenue multiples; and (ii) the Company's fully diluted outstanding shares.

32.     With respect to Centerview's *Selected Precedent Transactions Analysis*, the Solicitation Statement fails to disclose (i) the inputs and assumptions used to select the reference range of 5.0x to 8.0x of implied four-year forward revenue multiples; and (ii) the Company's fully diluted outstanding shares.

33.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the basis for applying the range of discount rates from 9.0% to 11.0%; (ii) the Company's implied terminal value and the inputs for assuming that unlevered free cash flows would decline in perpetuity after December 31, 2034 at a rate of free cash flow decline of 30.0% year-over-year for Trodelvy and IMMU-130, increase 5% year-over-year in perpetuity for the Company's SN-38 antibody-drug conjugate platform and increase 3% year-over-year for other corporate items, and (iii) the fully diluted outstanding shares as of September 9, 2020, and as of September 12, 2020 with the corrected fully-diluted share count.

34.     With respect to Centerview's *Premiums Paiud Analysis*, the Solicitation Statement fails to disclose the premiums paid in the selected biopharmaceutical transactions reviewed by Centerview.

35.     With respect to BofA's *Discounted Cash Flow Analysis*, the Solicitation Statement

fails to disclose: (i) the estimated present value of each of the following for the period from October 1, 2020 through December 31, 2034: (a) the gross profit expected to be generated by the Company for Trodelvy in metastatic triple negative breast cancer (or mTNBC), (b) the gross profit expected to be generated by the Company for Trodelvy in metastatic urothelial cancer (or mUC), (c) the gross profit expected to be generated by the Company for Trodelvy in estrogen receptor positive metastatic breast cancer (or ER+ mBC), (d) the gross profit expected to be generated by the Company for Trodelvy in metastatic non-small cell lung cancer (or mNSCLC), (e) the gross profit expected to be generated by the Company for other Trodelvy indications (including head and neck squamous cell carcinoma (or HNSCC), endometrial cancer (or ENDO), castration resistant prostate cancer (or CRPC) and Post-Neoadjuvant breast cancer), (f) the corporate expenses allocated to Trodelvy (including research and development, sales and marketing and general and administrative costs), (g) the royalties and milestone payment amounts (including royalties and milestone payments received from Everest Medicines II Limited and royalty payments to RPI Finance Trust and The Scripps Research Institute), (h) the gross profit expected to be generated by the Company for IMMU-130, (i) the corporate expenses allocated to IMMU-130 (including research and development, sales and marketing and general and administrative costs), (j) the probability of success adjusted earnings before income taxes allocated to the Company's antibody drug conjugate (or ADC) platform based on the Company's assumption of a new indication with $1 billion of peak net sales brought to market every two years with a five year ramp up period starting in 2027, (k) the unallocated corporate expenses and cash flow items (including research and development, sales and marketing and general and administrative costs, total depreciation and amortization, total capital expenditures and total change in working capital) and (l) the Company group's taxes (calculated based on a U.S. federal tax rate of 21% as provided by the Company

management); (ii) the terminal values for each of the above items (a) through (l); the basis for applying perpetuity growth rates ranging from negative 30.0% to negative 25.0% for items (a) through (i) and (l), perpetuity growth rates ranging from 3.0% to 5.0% for item (j) and perpetuity growth rates ranging from 0.0% to 2.0% for item (k); (iii) the inputs and assumptions for applying discount rates ranging from 8.5% to 11.0%; and (iv) the estimated present value of the Company NOLs calculated by BofA in the analysis.

36.    With respect to the premiums paid in selected precedented life sciences transactions reviewed by BofA, the actual premiums paid in the transactions.

37.    In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

38.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.    Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

40.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41.     The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

42.     In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

43.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

44.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

45.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Violations of Section 14(d)(4) of the Exchange Act and**
**Rule 14d-9 Promulgated Thereunder**
**(Against All Defendants)**

46.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

47.     Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

48.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

49.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

50.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had

access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

51.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of Immunomedics within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Immunomedics, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Immunomedics, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Immunomedics, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

56.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: September 25, 2020

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

/s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
Email:  melwani@whafh.com